**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENIA LANDA, | CIVIL ACTION NO. 13-3082 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| TOWNSHIP OF PLAINSBORO, et al., | |
| Defendants. | |

**COOPER, District Judge**

### INTRODUCTION

Defendants, Patrolman Bruce Stankiewicz ("Patrolman Stankiewicz") and Corporal Thomas Newbon ("Corporal Newbon") (collectively, "Officer Defendants"), move for summary judgment in their favor under Federal Rule of Civil Procedure ("Rule") 56(c).  (Dkt. 31; see also dkt. 31-4 at 48.)[1]  Defendant, the Township of Plainsboro ("Plainsboro"), joins the motion.  (Dkt. 32.)[2]  Plaintiff, Eugenia Landa, opposes the motion.  (Dkt. 37.)  The Court, for the reasons that follow, will deny the motion.

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt."  Pincites reference ECF pagination.

[2] The Court will reference Officer Defendants and Plainsboro collectively as "Defendants" in this Memorandum Opinion.

**DISCUSSION**

## I.      FACTUAL HISTORY

### A.      The Parties

Landa "is a resident of 7 Jackson Avenue in Princeton, New Jersey."  (Dkt. 1 at 1.)

Officer Defendants are employed by the Plainsboro Township Police Department.  (Id. at

2.)[3]  Plainsboro "is a municipal corporation organized and existing under the laws of the

State of New Jersey, which maintains its principal offices at 641 Plainsboro Road,

Plainsboro, New Jersey 08536."  (Id. at 1.)

### B.      The Incident

Landa was arrested on September 14, 2012 after a bystander, Bethanne Byrne,

witnessed her behaving erratically at the Princeton Forrestal Village shopping center.

(Dkt. 31-3 at 13–30; see also dkt. 31-9 at 2.)[4]  While sitting on a bench and talking on her

cell phone, Bryne observed Landa walk directly into a light post.  (Dkt. 31-3 at 13–14.)

Continuing to watch Landa, Bryne noticed that she swayed back and forth as she walked

down the sidewalk.  (Id. at 14.)  Bryne also noticed that Landa was following a little boy

who she estimated to be five years old.  (Id.)

Bryne saw Landa approach a black vehicle with the child, and she called 911 to

report a suspected intoxicated female driver.  (Id. at 14–15.)  Thereafter, Bryne observed

---

[3] Officer Defendants are named "both individually and in [their] official capacity as police officer[s], agent[s] and/or employee[s] of" Plainsboro in this lawsuit.  (Dkt. 1 at 2.)

[4] The facts stated here are undisputed.  The Court, when necessary, will identify disputed facts in explanatory footnotes in this section.  The Court will primarily cite to the papers submitted by the parties, and, when necessary, will cite to relevant appended exhibits.

Landa attempt to start the vehicle.  (Id. at 15.)  Bryne, in an effort to prevent Landa from

driving, "banged on the trunk" of the car.  (Id. (internal quotation omitted).)  Bryne, in a

police report dated September 15, 2012, described her encounter with Landa as follows:

> I banged on the trunk of the black Audi with my hand to get her attention –
> no reaction at all from her.  I got to the drivers [*sic*] side window and
> knocked.  I asked her to put the window down I needed to talk to her.  She
> put the window down.  I asked her to turn the car off.  She said "NO" that
> her husband was coming …. I asked her to park the car and told her she
> should not drive she had too much to drink.  She told me she was fine and
> that her husband was coming again.
>
> …
>
> She hit the gas and moved a few feet ahead out of the parking space then hit
> the brakes as I screamed at her to stop the car.  I realized she was not going
> to listen to me and I could not let her drive away.
>
> Therefore, I put my head and shoulders into the driver's window[,] reached
> across her around the steering wheel[,] and took the keys out of the ignition
> and popped my head and shoulders back out of the window.  I did not touch
> her …. She got out of the car and tried to chase me for the keys but she was
> not navigating with her feet (one shoe off) really well.

(Dkt. 31-9 at 2.)[5]

Bryne, upon seizing the keys from Landa's vehicle, threw them "far away[.]"

(Dkt. 31-25 at 4.)  Thereafter, Landa exited the vehicle to retrieve her keys.  (Id. at 4–5.)

Officer Defendants arrived "within minutes" and approached the black vehicle, "which

was parked partially out of a parking spot and partially in the roadway."  (Id. at 6; see

---

[5] According to Officer Defendants "Byrne only removed [Landa's] additional keys, but the
ignition key remained in the ignition.  However, the actions of … Byrne somehow resulted in the
engine turning off.  Plaintiff was apparently too intoxicated to realize that the ignition key was
still in the ignition."  (Dkt. 31-3 at 16.)

also dkt. 31-3 at 16–18.)  Patrolman Stankiewicz activated the Mobile Video Recorder

("MVR") in his patrol car at 5:35 p.m.  (Dkt. 31-3 at 17.)  He next approached Landa and

"detected an overwhelming odor of alcohol emanating from her person and breath."  (Id.

at 18.)  Landa admitted to consuming two beers and a lot of "meds."  (Id. at 20.)

Meanwhile, Corporal Newbon conducted a field sobriety test, called the Horizontal Gaze

Nystagmus test ("HGN Test"), to analyze Landa's sobriety.  (Id. at 19.)  The HGN Test

"revealed four … indicators … that [Landa] was intoxicated."  (Id.)

Patrolman Stankiewicz next asked Landa to perform two additional field sobriety

tests.  (Id. at 19–21.)[6]  The first, called the "walk-and-turn" test, requires an individual to

walk in a straight line by aligning the heel of one foot to the toe of another foot.  (See id.

at 19–20.)  As Patrolman Stankiewicz tried to explain the instructions related to the

"walk-and-turn" test, Landa "lost her balance and began to perform the test before the

instructions and demonstrations were completed."  (Id. at 20.)  Thereafter, she "lost her

balance while walking, took [an] incorrect number of steps and did not touch heel to toe

on any steps."  (Id.)[7]

Patrolman Stankiewicz, based upon Landa's "walk-and-turn" test performance,

determined that she failed.  (Id. at 21.)  He next asked Landa to perform the second field

sobriety test, the "one-leg-stand" test, which requires an individual to raise one leg in the

---

[6] Before conducting the two additional field sobriety tests, "Patrolman Stankiewicz ensured that the road surface was straight, level and free of debris …."  (Dkt. 31-3 at 19.)

[7] Landa's "steps were approximately a foot apart in length and she turned to her left and continued walking in that direction after her tenth step instead of turning as instructed."  (Dkt. 31-3 at 20.)

air and maintain balance.  (Id.)  Landa, upon raising one leg in the air, "was unable to

maintain her balance, swayed noticeably and put her foot down three … times because

she could not maintain her balance."  (Id.)  Patrolman Stankiewicz determined that Landa

failed the "one-leg-stand" test and administered a portable breathalyzer test.  (Id.)  The

result of the portable breathalyzer test indicated "a high probability" that Landa's blood

alcohol content ("BAC") was above the legal driving limit of 0.08%.  (Id.)

### C.   The Arrest

Patrolman Stankiewicz, based upon the failed sobriety testing and BAC result,

arrested Landa at approximately 5:57 p.m.  (Dkt. 31-7 at 3.)  Patrolman Stankiewicz

handcuffed Landa behind her back and placed her in the rear of his patrol car.  (Id.)

According to Patrolman Stankiewicz, the handcuffs were placed without incident, and he

"checked for proper fit by inserting the first joint of his pinkie finger between the

handcuffs and [Landa's] wrists."  (Dkt. 31-3 at 22.)  Next, Patrolman Stankiewicz

"double-locked the handcuffs" to ensure they could not be loosened or tightened.  (Id.)

Landa does not recall complaining that the handcuffs were too tight during the arrest.

(Dkt. 31-29 at 3.)

Patrolman Stankiewicz next drove his patrol car to the Plainsboro Township

Police Department Headquarters (hereinafter "Headquarters").  (Dkt. 31-3 at 23–25.)

During the five-minute drive, Landa cried and muttered to herself.  (Id. at 24–25.)  At one

point Landa muttered "ow, ow, ow[.]"  (Id.)  However, Patrolman Stankiewicz claims he

did not hear her.  (Id.)[8]

### D.    Detainment

Patrolman Stankiewicz escorted Landa inside Headquarters for processing.  (Id. at 25.)[9]  He advised Landa of her constitutional rights and observed her for twenty minutes. (Id. at 26.)  Thereafter, Landa submitted to a breathalyzer test via an Alcotest Machine, Drager 7110 Model.  (Id.)  The result was 0.34% BAC, which is more than four times the legal limit in the State of New Jersey.  (Id.)

Landa was charged with Driving While Intoxicated in violation of N.J.S.A. 39:4-50 and processed at Headquarters.  (Id. at 27.)  Patrolman Stankiewicz instructed her "to sit on [a] metal bench affixed to the rear wall in the processing room."  (Id.)  Patrolman Stankiewicz handcuffed one of her hands to the bench and continued processing the charge for approximately twenty to thirty minutes.  (Id. at 27–28)[10]  Landa did not complain that the handcuffs caused discomfort during processing.  (Id. at 28.)

---

[8] The parties dispute whether Patrolman Stankiewicz heard Landa cry "ow, ow, ow," because "the front seat and back seat are divided by a plexiglass partition which prevents physical contact between the occupants of the front and rear seat" and Patrolman Stankiewicz was listening to the police radio in the front seat.  (Compare dkt. 31-3 at 25, with dkt. 37 at 14.)  See also infra Sec.IV.A.1. Landa claims, however, that "she made at least three attempts to communicate with [Patrolman] Stankiewicz and he blatantly chose to ignore her."  (Dkt. 37 at 14.)

[9] Corporal Newbon was not present in the patrol vehicle during transportation to Headquarters. (Dkt. 31-4 at 26.)

[10] Patrolman Stankiewicz states that he removed Landa's handcuffs, and asked Landa to indicate her dominant hand.  (Dkt. 31-3 at 27.)  According to Patrolman Stankiewicz, Landa replied that she is right-handed, and Patrolman Stankiewicz handcuffed her left hand to the bench pursuant to the Plainsboro Township Police Department General Order 3.3.2.  (Id.)  However, Landa testified that her right hand was handcuffed to the bench – and her left hand was free – during processing.  (Dkt. 31-29 at 8.)

Patrolman Stankiewicz, after processing, "began to prepare the forms required of the DUI arrest, including the arrest report, summonses, prisoner log, property report, etc., which took approximately one hour." (Id. at 29.)  The following summonses, which required a mandatory municipal court appearance, were issued to Landa: (1) "Criminal Complaint Summons Number 1218-S-2012-000259 for driving while intoxicated with a minor passenger"; (2) "Summons Number 253365 for driving while intoxicated"; (3) Summons Number 253366 for driving in a school zone while intoxicated"; (4) "Summons Number 253367 for driving while intoxicated with a minor passenger"; (5) "Summons Number 253368 for reckless driving"; (6) "Summons Number 253369 for being an uninsured motorist"; and (7) "Summons Number 253370 for having an unregistered vehicle." (Id. at 29–30.)  Thereafter, Landa was released to her husband at approximately 9:00 p.m.  (Id. at 30.)

### E.    Medical Consultation

Landa sought medical care at the University Medical Center at Princeton on September 16, 2012, two days after the arrest.  (Id. at 31.)  She complained of "blisters to her hands and arms, fainting, feeling very weak, having weakness in her hands, having difficulty opening jars and having difficulty straightening her fingers." (Id.)  The admitting nurse documented that Landa reported she was "aggressively restrained" with "tight handcuffs."  (Dkt. 31-12 at 3.)

Landa was transferred to the Hospital of the University of Pennsylvania ("HUP") on September 16, 2012 for further evaluation and treatment.  (Dkt. 31-3 at 31.)  The HUP discharging nurse documented that Landa was hospitalized for the treatment of

rhabdomyolysis, bipolar disorder, and nephroliathiasis.  (Dkt. 31-41 at 2.)[11]  Landa was

discharged home on September 18, 2012.  (Id. at 4.)  Since that date, Landa has sought

medical care for her alleged wrist injuries at eight health care facilities.  (Dkt. 37 at 15.)

## II.    PROCEDURAL HISTORY

Landa filed this action on May 15, 2013.  (Dkt. 1.)  The complaint contained three

counts.  (Id. at 4–8.)  The first count alleged that Defendants deprived Landa "of her

rights, privileges and immunities under the Laws and Constitutions of the State of New

Jersey and the United States; in particular, the right to be free from the use of excessive

force, which actions violated the Plaintiff's rights under the Fourth and Fourteenth

Amendments to the Constitution of the United States, the Constitution of the State of

New Jersey, the Laws of the United States and of the State of New Jersey, and … in

violation of 42 U.S.C. § 1983."  (Id. at 4.)  Landa, with respect to the first count, claimed

"compensatory and punitive damages against the defendants plus interest, costs,

attorney's fees, and other appropriate relief."  (Id. at 5.)

The second count stated that the alleged "tight handcuffing" of Landa violated her

constitutional rights by the use of "excessive force."  (Id.)  According to Landa, Officer

Defendants "knew or should have known the tight handcuffing of [Landa] and refusal to

loosen the handcuffs constituted excessive force in violation of … [her] rights under the

United States and New Jersey Constitutions."  (Id.)  Landa, with respect to the second

---

[11] "Rhabdomyolysis is a serious syndrome due to a direct or indirect muscle injury.  It results
from the death o[f] muscle fibers and release of their contents into the bloodstream."  (Dkt. 31-45
at 2.)  "[T]he definition of nephrolithiasis is [the] process of forming a kidney stone."  (Dkt. 31-3
at 32.)

count, claimed "compensatory and punitive damages against the [Officer] [D]efendants plus interest, costs, attorney's fees, and other appropriate relief."  (Id. at 6.)

The third count alleged, inter alia, that the Township of Plainsboro adopted policies, customs, or practices that: (1) acquiesced to "the use of excess force by its officers; systematically verbally and physically abusing individuals … which … constitutes the use of excessive force and violates the Fourth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the State of New Jersey, the Laws of the United States and of the State of New Jersey, and … in violation of 42 U.S.C. § 1983"; and (2) failed "to properly train, supervise and/or discipline officers … regarding constitutional restraints on the use of force, which policy violates the Fourth and Fourteenth Amendments of the Constitution of the United States, the Constitution of the State of New Jersey, the Laws of the United States and of the State of New Jersey, and … in violation of 42 U.S.C. § 1983."  (Id. at 6–7.)  Landa claimed compensatory damages "plus interest, costs, attorney's fees, and other appropriate relief" with respect to the third count.  (Id. at 8.)

## III.    LEGAL STANDARDS

### A.    Rule 56(c)

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Rule 56 provides that summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is genuine if the evidence is sufficient

to permit a reasonable jury to return a verdict for the non-moving party." <u>Lamont v. New Jersey</u>, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and quotation omitted). This evidence may include "citing to particular parts of materials in the record" or a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)–(B).

If the movant demonstrates an absence of genuinely disputed material facts, then the burden shifts to the non-movant to demonstrate the existence of a genuine issue for trial. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non–moving party, there is no genuine issue for trial." <u>Id.</u> at 587 (internal quotation omitted). The non-movant must show the existence of issues for trial by referring to the record. <u>See</u> Fed.R.Civ.P. 56(c)(1).

A federal district court, when determining whether a genuine dispute of material fact exists, must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor. <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). If the non-movant fails to demonstrate that at least one genuine factual dispute exists for trial, then the Court must determine whether the movant is entitled to judgment as a matter of law. <u>See</u> <u>McCann v. Unum Provident</u>, 921 F.Supp.2d 353, 357 (D.N.J. 2013). "A movant is entitled to judgment as a matter of law if, at trial, no reasonable jury could find for the non-moving party." <u>Id.</u>

## IV.   APPLICATION OF LEGAL STANDARD

### A.   Defendants' Arguments

Defendants ask the Court to grant summary judgment in their favor with respect to each count.  (Dkt. 31-4.)  Defendants also argue that Officer Defendants are entitled to qualified immunity.  The Court will analyze those arguments below.

### 1.   The First Count: Excessive Force

Defendants argue that Patrolman Stankiewicz applied the handcuffs to Landa "consistent with his training and in the presence of a superior officer, Corporal Newbon ...."  (Dkt. 31-4 at 15.)  Moreover, according to Defendants, Landa "never complained that the handcuffs were too tight when she was handcuffed outside her vehicle, never complained about the handcuffs while she was in the patrol vehicle, and never complained at ... Headquarters."  (Id. at 16.)  However, Defendants concede that the MVR reveals that that Landa said "ow" when Patrolman Stankiewicz drove the patrol car to Headquarters.  (Id.)  According to Defendants, the patrol car "had a police radio and a plexiglass divider separating the backseat from the front seat[,]" which prevented Patrolman Stankiewicz from hearing Landa speak.  (Id.)[12]  Defendants also point out that Landa immediately qualified her complaints by stating she was "fine" on the MVR footage.  (Id.)[13]  Thus, Defendants contend that the first count fails as a matter of law

---

[12] Specifically, Patrolman Stankiewicz claims he "only heard [Landa] crying and utter outbursts in the back of the patrol vehicle while she was being transported to [H]eadquarters."  (Dkt. 31-4 at 16.)

[13] Landa stated she was "fine" after Patrolman Stankiewicz instructed her to sit up in the back of the patrol car.  (Dkt. 31-26 at 2.)

because Landa does not make the requisite demonstration that Officer Defendants "were advised that the handcuffs were too tight and that … [Officer Defendants] refused to loosen same."  (Id. at 17–18.)

Defendants also argue that Corporal Newbon is exempt from liability with respect to the first count because Landa "failed to provide any evidence to support the contention that Corporal Newbon applied the handcuffs to Plaintiff … [or] that Corporal Newbon used excessive force or failed to intervene in the handcuffing procedure …."  (Id. at 22.) Defendants also contend that Landa does not point "to any evidence that Corporal Newbon knew or had reason to know that Patrolman Stankiewicz used excessive force in handcuffing [her] at the scene and that Corporal Newbon had a reasonable opportunity to intervene."  (Id.)  With respect to Corporal Newbon's involvement in the arrest, Defendants state that "the only interaction Corporal Newbon had with [Landa] was at the scene" of the incident.  (Id.)

### 2.    The Second Count: Failure to Intervene

Defendants ask the Court to grant summary judgment in their favor on the second count on the ground that Landa's "claims for excessive force … fail as a matter of law." (Id. at 25.)  Initially, Defendants argue that Landa does not plead a viable failure to intervene claim because she does not demonstrate that Officer Defendants: "(1) knew that a fellow officer was violating [her] constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act."  (Id. at 24.)  The second count fails as a matter of law, in Defendants' view, because neither Patrolman Stankiewicz nor Corporal

Newbon committed a constitutional violation during the arrest. (<u>Id.</u> at 25.)[14]

### 3.   The Third Count: Policy, Custom, and Practice of Condoning Excessive Force

Defendants, for the reasons discussed <u>supra</u> Sec.IV.A.1, argue that the third count

fails as a matter of law because Landa does not demonstrate that a constitutional violation

occurred.  (<u>Id.</u> at 35–38.)  Defendants also argue that Landa fails to establish that any

alleged misconduct "was the result of a policy, statement, ordinance, regulation or

decision officially adopted and promulgated by the [Township of Plainsboro's] officers

or pursuant to a governmental custom."  (<u>Id.</u> at 36.)  Specifically, Defendants contend

that Landa fails to demonstrate that: (1) "a policy, practice, or custom of the Township of

Plainsboro existed to hold it liable"; and (2) "there is an affirmative link between any

policy and the alleged deprivation of [Landa's] Constitutional rights."  (<u>Id.</u> at 39.)

Defendants argue that Landa cannot establish "that a pattern, custom or practice to

violate constitutional rights by using excessive force in the application of handcuffs

existed in the Plainsboro Township Police Department prior to" the arrest.  (<u>Id.</u> at 39–41.)

Even granting the inference that Officer Defendants acted improperly, Defendants

contend that "a single instance of the use of force by the police against an arrestee … will

---

[14] Defendants contend that because Landa "cannot establish that Corporal Newbon violated [her] constitutional rights, there can be no failure to intervene claim as to Patrolman Stankiewicz." (Dkt. 31-4 at 25.)  With respect to Corporal Newbon's alleged failure to intervene, Defendants argue that "the facts are clear that Corporal Newbon was not present in the patrol vehicle during [Landa's] transportation to … Headquarters[,] and that he was not present at … Headquarters while [Landa] was being processed." (<u>Id.</u> at 26.)  Based upon those facts, Defendants argue that Landa fails to demonstrate "that Corporal Newbon observed a constitutional violation, was aware that a constitutional violation had occurred, or had a reasonable opportunity to prevent the harm but chose not to act." (<u>Id.</u>)

not establish the existence of a municipal custom, policy or practice … by … police officers." (Id. at 37–40.)  Rather, according to Defendants, "[t]he law requires that there be multiple prior instances of [failures] sufficient to put a municipality on notice such that it could be deemed to have developed a policy or custom." (Id. at 37–38 (citing Hammock v. Borough of Upper Darby, No. 06-1006, 2007 WL 3232115, *8 (E.D. Pa. 2007).)

Defendants cite to the paucity of excessive force complaints related to the application of handcuffs by the Plainsboro Township Police Department to support the argument that Landa "cannot prove that there is an affirmative link between any policy and the alleged deprivation of [her] Constitutional rights." (Id. at 39.)  According to Defendants, the Plainsboro Township Police Department has only responded to two complaints regarding alleged excessive force during the application of handcuffs. (Id. at 39–41.)  The Plainsboro Township Police Department investigated the first complaint, and "[t]he officer was exonerated of the charge as his actions were deemed to be justified, legal and proper." (Id. at 40.)   The second complaint was likewise investigated and deemed "unfounded based on the complainant's lack of credibility and the statements of two independent witnesses, who said that the officer's removal of the handcuffs was done 'gently.'" (Id. at 40–41.)  Thus, Defendants construe the two complaints as failing to support Landa's "allegations that a pattern, custom or practice to violate constitutional rights by using excessive force in the application of handcuffs existed in the Plainsboro Township Police Department …." (Id. at 41.)

Defendants also argue that Landa fails to establish that the Township of Plainsboro

14

did not properly train its police officers with respect to the application of excessive force. (Id. at 43–46.)[15]  Defendants, in support of that argument, contend that "the evidence clearly demonstrates that Corporal Newbon and Patrolman Stankiewicz had years of experience and received extensive training over the course of their respective careers, which includes semiannual use of force training."  (Id. at 45.)[16]  Moreover, according to Defendants, "the Plainsboro Township Police Department is an accredited department, which evidences a thorough and complete organization based on standards that reflect professional best practices."  (Id.)

### 4.    Qualified Immunity

Officer Defendants argue that they are entitled to qualified immunity because "[t]he MVR clearly shows that Patrolman Stankiewicz did not apply excessive force in handcuffing [Landa]."  (Id. at 31 (emphasis omitted).)  According to Defendants, "the MVR likewise clearly shows that [Landa] never complained that the handcuffs were too

---

[15] Defendants attempt to discredit Landa's expert, James Williams, discussed infra Sec.IV.B.3, on the ground that he does not "set forth how the Plainsboro Township Police Department … fails to meet the proper police practice standard and requirements of the Attorney General Guidelines and the Police Training Commission."  (Dkt. 31-4 at 42.)  Defendants, with respect to Landa's alleged prolonged confinement during processing, also point out that Williams fails to reference the Plainsboro Township Police General Order 3.3.2, which states that "[o]nce the Alcotest 7110 portion of processing is completed, the suspect may be moved to the Prisoner Interview Room and secured to the bench to complete processing."  (Id. (emphasis omitted).)

[16] Defendants point to the expert opinion of defense expert Major Craparotta to support that claim. (Dkt. 31-4 at 45–46.)  Major Craparotta opines that: (1) "handcuffing is a component of the use of force semiannual training mandated by the Attorney General Guidelines"; and (2) "the training records, the Rules and Regulations of the Plainsboro Township Police Department as well as the New Jersey Police Training Commission standards and the Attorney General Guidelines were complied with and that Corporal Newbon and Patrolman Stankiewicz were properly trained."  (Id.)

tight or that she was experiencing pain after being cuffed, while being walked to the patrol vehicle, while being placed in the patrol vehicle for transport to … Headquarters, or while seated in the patrol vehicle." (<u>Id.</u> (emphasis omitted).)[17]  Upon arrival at Headquarters, Defendants contend that Landa "did not complain to Patrolman Stankiewicz or to any other officer that the handcuffs were too tight or that she was experiencing pain." (<u>Id.</u> at 32.)[18]  Thus, largely based upon the MVR footage, Defendants claim "it is abundantly clear that no reasonable factfinder could conclude that Patrolman Stankiewicz and/or Corporal Newbon violated [Landa's] clearly established rights during the handcuffing procedures." (<u>Id.</u> at 32–33.)

### B.    Landa's Arguments

Landa argues that "[t]here is no doubt that … Defendants' actions constitute[d] the use of excessive force" and therefore each count must proceed for "proper adjudication on liability and damages." (Dkt. 37 at 5.)  Landa also claims that: (1) Officer Defendants are not entitled to qualified immunity; (2) Patrolman Stankiewicz's credibility is at issue; and (3) several material issues of fact remain in this action. (<u>Id.</u> at 20–34.)   The Court will consider Landa's arguments below.

---

[17] Defendants claim that Patrolman Stankiewicz did not hear Landa say "ow" during transportation to Headquarters. (Dkt. 31-4 at 31.)  <u>See also</u> <u>supra</u> Sec.I.C.  Defendants construe Landa's subsequent statement – "I am fine" – as negating the initial expression of pain. (<u>Id.</u>)

[18] Defendants also argue that any alleged connection between the application of handcuffs and Landa's bilateral wrist injuries are limited to the period before she was handcuffed to the bench during processing, because only one handcuff was affixed during that period. (Dkt. 31-4 at 32.)  <u>See also</u> <u>supra</u> Sec.I.D.

### 1.    The First Count: Excessive Force

Landa, with respect to the first count, argues that "based on the totality of the circumstances" Officer Defendants "used excessive force in violation of [her] Fourth Amendment rights." (Id. at 18.)  Landa's excessive force claims stem from Officer Defendants' alleged failure to identify and alleviate the "pain from the handcuffs." (Id. at 11.)  Landa claims that, during transport to Headquarters, "her hands began to turn numb and she could no longer feel her hands." (Id. at 13.)  According to Landa, Patrolman Stankiewicz ignored her when she complained of pain in her wrists "at least 3 times[.]" (Id. at 6.)  Landa also points out that the MVR footage and the Internal Affairs Report related to the arrest "unequivocally confirm that … Landa complained that 'my arms hurt' and cried 'ow, ow, ow' as she sobbed uncontrollably in the back seat of the police car and adjusted her seating position numerous times to alleviate the pain." (Id.)  Landa believes that Patrolman Stankiewicz "could hear and see that she was in excruciating pain" in the patrol car. (Id. at 11 (emphasis omitted).)  Landa also contends that she remained in pain and cried at Headquarters, but Officer Defendants and other police officers ignored her. (Id. at 6–7.)[19]

Landa argues that, when considering an excessive force claim, the Court must evaluate whether the officer's actions were "objectively reasonable" in light of the surrounding circumstances. (Id. at 9–10.)  Here, the alleged application of excessive

---

[19] According to Landa, at Headquarters "[o]ther officers … walked by … continuously" and "saw her crying and in extreme pain[.]"  (Dkt. 37 at 7.)

force was not objectively reasonable, in Landa's view, because: (1) she was unarmed and did not pose an immediate threat to the arresting officers; (2) Patrolman Stankiewicz "is in peak physical condition"; (3) the three arresting officers "did not have to deal with any other suspects at the time" of the arrest; and (4) she did not resist arrest.  (Id. at 10–11.) Thus, based upon the circumstances surrounding the arrest, Landa purports that "[a]ny reasonable officer in the situation would not have handcuffed [Landa] too tightly and would have adjusted the handcuffs after hearing … complaints and witnessing [her] crying …."  (Id. at 11.)[20]

### 2.    The Second Count: Failure to Intervene

Landa asks the Court to deny Defendants' motion for summary judgment with respect to the second count on the ground that "Defendants had a realistic opportunity to intervene and to prevent the violation of [Landa's] constitutional rights, but failed to do so."  (Id. at 29.)  With respect to Patrolman Stankiewicz, Landa contends that he "knew or should have known that the tight handcuffing … and the refusal to loosen the handcuffs would constitute excessive force."  (Id.)

Landa also contends that Corporal Newbon "is liable in this case because he failed to intervene" with respect to the application of handcuffs "despite a reasonable opportunity to do so."  (Id.)  According to Landa, Corporal Newbon was present at

---

[20] Landa argues that the cases cited by Defendants do not apply here, because those cases involved situations "where the arrestee did not voice a complaint or where the arrestee did not seek medical attention immediately after the incident – or both."  (Dkt. 37 at 18.)  Those cases do not apply here, in Landa's view, because "Landa complained to [Patrolman] Stankiewicz about the pain she endured as a result of the handcuffs and immediately sought medical treatment after the incident."  (Id. at 19.)

Headquarters, and he ignored her.  (Id. at 30.)  Thus, Landa concludes that Corporal

"Newbon knew or should have known that excessive force was being used against [her]

and … did nothing to intervene."  (Id. at 31.)

### 3. The Third Count: Policy, Custom, and Practice of Condoning Excessive Force

Landa, with respect to the third count, argues that "[t]he Plainsboro [Township]

Police Department lacks a comprehensive policy on how to teach application of

handcuffs."  (Id. at 40.)  According to Landa, the Plainsboro Township Police

Department failed to: (1) adopt a General Order governing handcuff application; and (2)

"provide a specific course on [the] application of handcuffs."  (Id.)[21]  Landa also

contends that "the evidence is clear that [Officer Defendants] violated … Landa's Fourth

Amendment rights when they ignored her pain caused by the handcuffs and kept her

handcuffed at the metal bench at the station for two and a half hours."  (Id. at 32.)

Landa relies on the opinion of her expert, James Williams, to support the argument

that "the Township is clearly in violation of [its] policies."  (Id. at 34–42.)[22]  Specifically,

---

[21] Landa contends that Patrolman Stankiewicz falsely represented that he is an instructor in the application of handcuffs, because the Supplemental Internal Affairs Investigation Report with respect to Landa's arrest states "[i]t should be noted that Ptl. Stankiewicz is a handcuffing instructor for the department."  (Dkt. 37 at 40; see also dkt. 35-1 at 21.)  However, Patrolman Stankiewicz later testified that he has "never been an instructor of handcuffing."  (Dkt. 39 at 19.) The Court, based upon the papers submitted by the parties, cannot resolve that factual discrepancy at this procedural juncture.  Lamont, 637 F.3d at 181.

[22] Williams is "an Adjunct Professor of Law and Justice Studies at Rowan University in Glassboro, New Jersey, where" he teaches "Criminal Justice Courses in a variety of topics relating to law enforcement."  (Dkt. 34-1 at 1.)  Previously, Williams was a New Jersey State Highway Patrolman in the New Jersey Division of Motor Vehicles.  (Id. at 11.)  He also served as a certified police officer in New Jersey.  (Id.)

Williams, opines that Landa's arrest and detainment violated "standard and accepted police procedure" and the Plainsboro Township Police Department's General Orders. (Dkt. 34-1 at 17.)  In Williams' professional opinion, the Township also "lacked appropriate policy and police training mandates for appropriate handcuffing techniques[.]"  (Id. at 18.)  The Court will discuss those opinions below.

### i.  Alleged Violations of the Plainsboro Township Police Department General Orders

Williams contends that Officer Defendants violated the Plainsboro Township Police Department General Order 3.2.5 – Arrest Procedure ("Plainsboro Arrest Procedure"), which mandates, in relevant part, as follows:

> When applying handcuffs and/or leg irons, officers are reminded that these items shall be applied in such a manner as to prevent unnecessary pain or injury to the prisoner.
>
> Handcuffs and leg irons shall be:
>
> 1.    Tightened to prevent escape but not overly tightened so as to cause pain or restricted blood flow.
>
> 2.    Double locked after application.

(Id. at 4–5; see also dkt. 39 at 52.)

Williams opines that Officer Defendants violated the Plainsboro Arrest Procedure, because Patrolman Stankiewicz ignored Landa's alleged "signs of pain and discomfort" during the arrest and detainment.  (Dkt. 34-1 at 5.)[23]  Moreover, in Williams' professional

---

[23] Landa argues that the Plainsboro Arrest Procedure is deficient as failing to address: "(a) how to restrain the arrestee when applying the handcuffs[;] (b) how to check for tightness[;] and (c) how often to check the arrestee to see if the handcuffs are causing harm or damage.  (Dkt. 37 at 36.)  However, Landa does not cite to Williams' expert report to support that argument.  (See id.)

opinion, a "reasonable and prudent thinking well trained police officer[] should have, and would have, without request or complaint, routinely checked the position of the handcuffs …." (Id. at 19.)  Thus, Williams concludes that in his "opinion, based upon a reasonable degree of professional certainty … Patrolman … Stankiewicz and Corporal … Newbon … violated trained mandates on Use of Force[.]"  (Id. at 16.)

Williams also references the Plainsboro Township Police Department General Order 3.2.5 – Admissions Procedure ("Plainsboro Admissions Procedure") to support his expert opinion.  (Id. at 16–17.)  Pursuant to the Plainsboro Admissions Procedure, "after a detainee is processed, the detainee shall be released or housed in a cell to await bail or transportation to the appropriate detention facility."  (Id. at 16.)  According to Williams, Patrolman Stankiewicz violated the Plainsboro Admissions Procedure when he handcuffed Landa to the bench during processing.  (Id. at 17.)  See also supra Sec.I.D. Thus, Williams, based on the opinions described above, concludes that Officer Defendants "ignored appropriate New Jersey Attorney General Excessive Use of Force Mandates and Plainsboro Township Police Department General Orders for the use of reasonable and necessary force."  (Dkt. 34-1 at 19.)

### ii.    Alleged Inappropriate Policy and Police Training

Williams also opines that "the Plainsboro Township Police Department lacked appropriate policy and police training mandates for appropriate handcuffing techniques[.]"  (Id. at 18.)  Williams criticizes the Plainsboro Township Police Department for its alleged failure to: (1) provide continued training regarding the application of handcuffs; and (2) "adopt and appropriately train it's [sic] police

21

department and police officers and police supervisors in a uniformed policy, procedures, and supervision mandate." (Id. at 18–19.)  Williams concludes that the lack of uniform procedures with respect to handcuffing "led to officers formulating their own methods, both in the field, in-custody, during transportation, and in-house." (Id. at 19–20.)[24]

### 4.  Qualified Immunity

Landa argues that Defendants fail to demonstrate that they are entitled to qualified immunity with respect to her claims. (Dkt. 37 at 31–32.)  Landa, in support of that argument, claims that Officer Defendants violated her "Fourth Amendment rights when they ignored her pain caused by the handcuffs and kept her handcuffed at the metal bench at the station for two and a half hours." (Id.)[25]  With respect to the drive to the police station, Landa claims that Patrolman Stankiewicz "could clearly see [she] was in pain by the way [she] was sobbing uncontrollably and trying to alter the position of [her] hands in order to alleviate pain." (Id. at 33.)  Landa also claims that Officer Defendants and other police officers "continuously" walked by her "during [the] 2.5 hours that she was handcuffed to the corroded metal bench." (Id.)  Thus, relying on those claims, Landa contends that "the actions by the Defendants constituted excessive force in violation of

---

[24] Williams opines that the testimony of two officers of the Plainsboro Township Police Department, Patrolman Stankiewicz and Officer Daniel Kanaley, demonstrates that the Plainsboro Township Police Department did not implement a uniform policy as to the application of handcuffs. (Dkt. 34-1 at 18.)  According to Williams that "lack of uniformity … was in part causation of inappropriate processing during the arrest handcuffing, in-custody detainment, and due care of … Landa by officials of the Plainsboro Township (NJ) Police Department." (Id. at 20.)

[25] Landa, with respect to that argument, contends that "Defendants have not met their burden to prove that their actions were objectively reasonable." (Dkt. 37 at 34.)

… [her] Fourth Amendment rights[,]" and therefore Officer Defendants are not shielded by qualified immunity.  (Id. at 33–34.)

### 5.    Credibility of Patrolman Stankiewicz

Landa argues that summary judgment is not appropriate in this case because Patrolman Stankiewicz's credibility is at issue.  (Id. at 20–24.)  Landa, in support of that argument, contends that Patrolman "Stankiewicz has demonstrated a substantial amount of contradictions in his conduct and testimony, which renders his overall credibility to be extremely lacking and insufficient to establish no genuine issue of material fact under the summary judgment standard."  (Id. at 20.)  Specifically, Landa claims that Patrolman Stankiewicz misrepresented: (1) that he was a certified handcuffing instructor for the Plainsboro Township Police Department; and (2) "how long Landa remained handcuffed to the corroded metal bench at the Police Station."  (Id. at 20–22.)  See also supra Sec.III.B.3 n.20.  Landa also characterizes Patrolman Stankiewicz's personnel file as "riddled with sub-standard evaluations."  (Dkt. 37 at 24.)

### 6.    Disputed Facts

Landa claims that the parties dispute material facts in this case sufficient to bar the Court from granting summary judgment.  (Id. at 25–28.)  Specifically, Landa disputes whether:

(1)  Patrolman "Stankiewicz applied the handcuffs properly upon [Landa] under the objectively reasonable standard";

(2)  Patrolman "Stankiewicz applied the handcuffs upon Plaintiff with difficulty, which shows that the handcuffs were not applied properly under the objectively reasonable standard";

23

    (3)  "Landa complained of the pain caused by the handcuffs";

    (4)  "Landa demonstrated she was in pain caused by the handcuffs under the objectively reasonable standard";

    (5)  Patrolman "Stankiewicz ignored or did not hear ... Landa's complaints of the pain from the handcuffs under the objectively reasonable standard";

    (6)  "Corporal Newbon was present at … [H]eadquarters while [Landa] was handcuffed to the metal bench for 2.5 hours so he had no opportunity to intervene under the objectively reasonable standard";

    (7)  "Landa was handcuffed to the metal bench at the station for 2.5 hours under the objectively reasonable standard";

    (8)  "Landa being handcuffed to the metal bench at the station for 2.5 hours is an objectively reasonable amount of time"; and

    (9)  Patrolman "Stankiewicz was a handcuffing instructor for Plainsboro, which determines if Plainsboro had proper training procedures under the objectively reasonable standard[.]"

(Id.)

According to Landa, the above-listed nine material disputed facts are properly decided by a jury.  (Id. at 28.)

    **C.**    **Analysis**

The Court has reviewed the papers and MVR recording, and will decide the motion pursuant to Local Rule 78.1(b).  (Dkt. 31; dkt. 32; dkt. 34; dkt. 35; dkt. 36; dkt. 37; dkt. 38; dkt. 39; dkt. 40; dkt. 43; dkt. 44.)[26]  The Court, for the reasons described below, will deny Defendants' motion for summary judgment.

---

[26] This Court accepted Defendants' invitation "to review the MVR in order … to draw its own conclusions."  (Dkt. 43 at 8–9 n.1.)

### 1.      The First Count: Excessive Force

The Court finds that disputed issues of material fact exist warranting the denial of Defendants' motion for summary judgment on the first count of the complaint.  Excessive force claims are analyzed under the Fourth Amendment objective reasonableness standard, which is viewed "from the perspective of a reasonable officer on the scene …." Graham v. Connor, 490 U.S. 386, 396 (1989).  The objective reasonableness of the force applied depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.

The parties here dispute facts related to the objective reasonableness of Defendant Officers' conduct, including inter alia: (1) the tightness of the handcuffs; (2) whether Officer Defendants heard Landa's complaints during transportation to Headquarters and detainment; and (3) the length of time that Landa was secured to the metal bench. Compare supra Sec.IV.A, with supra Sec.IV.B.  Viewing the facts in the light most favorable to Landa, the Court cannot conclude that the Defendant Officers' "use of force was objectively reasonable as a matter of law" at this procedural juncture.  Abraham v. Raso, 183 F.3d 279, 296 (3d Cir. 1999); see also Murdock v. Borough of Edgewater, No. 08-2268, 2011 WL 5320995, at *15 (D.N.J. Nov. 2, 2011).  Thus, in light of the remaining factual issues related to the reasonableness of the alleged force applied by Officer Defendants, the Court will deny Defendants' motion for summary judgment on the first count.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[A]t the

summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.")

### 2.    The Second Count: Failure to Intervene

The Court finds that Landa has set out specific facts demonstrating a genuine issue for trial with respect to the second count. Fed.R.Civ.P. 56(c).  "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation … takes place in his presence, the officer is directly liable under Section 1983."  Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (internal quotation omitted).  An officer is only liable, however, "if there [was] a realistic and reasonable opportunity to intervene."  Id. at 651.

The record is simply too conflicted to permit the Court to make any determination as to whether Patrolman Stankiewicz or Corporal Newbon had a realistic opportunity to intervene during the alleged application of excessive force.  The Court, granting all reasonable inferences in favor of Landa, finds that material factual disputes exist as to, inter alia: (1) Officer Defendants' knowledge of Landa's alleged pain during the arrest and detainment; and (2) whether Corporal Newbon witnessed Landa's alleged pain and discomfort at Headquarters.  Compare supra Sec.IV.A, with supra Sec.IV.B.  Landa, for example, claims that Patrolman Stankiewicz and Corporal Newbon were present during the arrest, the application of handcuffs, and detainment at Headquarters.  See supra Sec.IV.B.2.  According to Landa, Officer Defendants ignored obvious signs of discomfort related to the application of the handcuffs.  See id.  The Court thus finds that

Landa raises material issues of fact related to the second count sufficient to survive

Defendants' motion for summary judgment.  Hammock, 2007 WL 3232115, at *5.

Accordingly, the Court will deny Defendants' motion for summary judgment on the

second count.[27]

### 3.  The Third Count: Policy, Custom, and Practice of Condoning Excessive Force

### i.  Alleged Violations of the Plainsboro Township Police Department General Orders

A municipality is held liable under 42 U.S.C. § 1983 ("§ 1983") "when execution

of a government's policy or custom … inflicts the injury."  Monell v. Dep't of Social

Services, 436 U.S. 658, 694 (1978).  The scope of § 1983 liability against a municipality

is described as follows:

> Local governing bodies, therefore, can be sued directly under § 1983 for
> monetary, declaratory, or injunctive relief where … the action that is
> alleged to be unconstitutional implements or executes a policy statement,
> ordinance, regulation, or decision officially adopted and promulgated by
> that body's officers.  Moreover, although the touchstone of the § 1983
> action against a government body is an allegation that official policy is
> responsible for a deprivation of rights protected by the Constitution, local
> governments, like every other § 1983 person, by the very terms of the
> statute, may be sued for constitutional deprivations visited pursuant to
> governmental custom even though such a custom has not received formal
> approval through the body's official decisionmaking channels.

(Id. at 690–91 (internal footnote omitted).)

---

[27] Defendants ask the Court to dismiss "all claims for punitive damages asserted against Corporal
Newbon and Patrolman Stankiewicz" on the ground that Landa has "set forth neither [a]
cognizable claim for compensatory damages nor any violation of her constitutional rights."
(Dkt. 31-4 at 46–48.)  The Court, in light of the material issues of fact discussed supra
Sec.IV.C.1–2, will make no ruling as to the applicability of punitive damages.

Defendants claim that Landa does not identify "a policy, practice, or custom of the Township of Plainsboro … to hold it liable."  See supra Sec.IV.A.3.  However, Landa's expert, Williams, claims that Defendant Officers violated the Plainsboro Arrest Procedure and Plainsboro Admissions Procedure, which resulted in Landa's alleged injuries.  See supra Sec.IV.B.3.i.  Moreover, according to Williams, the Plainsboro Township Police Department failed to adopt and implement a uniform policy with respect to the application of handcuffs.  See supra Sec.IV.B.3.ii.  The Court, in light of the evidence submitted by Landa, finds that a material issue of fact exists as to whether the Township of Plainsboro, "under color of some official policy, caused" Defendant Officers "to violate [Landa's] constitutional rights."  Monell, 436 U.S. at 692. Accordingly, the Court will deny summary judgment on the third count as to issues concerning alleged violations of the Plainsboro Township Police Department's General Orders.  Harris, 550 U.S. at 380.

### ii.    Alleged Inappropriate Policy and Police Training

A municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  A municipality "is liable if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train." Id. at 387.  A plaintiff, in support of a claim that a municipal defendant "failed to train and instruct its police officers on the use of handcuffs … must identify a failure to provide specific training that has a causal nexus with [her] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate

28

indifference to whether the alleged constitutional deprivations occurred." Murdock, 2011 WL 5320995, at *18 (internal quotation omitted).

Defendants contend that Defendant Officers were trained regarding the use of excessive force in accordance with the Attorney General guidelines. See supra Sec.IV.A.3 n.16. Landa counters that Defendant Officers did not receive adequate training regarding the application of excessive force. (Dkt. 37 at 40–41.) See supra Sec.IV.B.3.ii. The Court, in light of the conflicting evidence, finds that a material issue of fact exists as to the appropriateness of the Plainsboro Township Police Department's training on the use of excessive force. The Court, granting all inferences in favor of Landa, finds sufficient evidence from which a reasonable jury could return a verdict in favor of Landa. Anderson, 477 U.S. at 255. Accordingly, the Court will deny summary judgment in favor of the Township of Plainsboro on the third count with respect to the alleged inappropriate training of the Plainsboro Township Police Department. City of Canton, 489 U.S. at 389.

### 4. Qualified Immunity

The Court, for the reasons stated supra Sec.IV.C.1, does not find that Officer Defendants are entitled to qualified immunity at this procedural juncture. "The qualified immunity analysis is two-fold." Murdock, 2011 WL 5320995, at *12. First, a federal district court must consider "whether the officer violated a constitutional right[.]" Id. The second consideration determines "whether the right was clearly established, such that it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted[.]" Id. (internal quotation omitted). Stated differently, the second

consideration analyzes whether "a reasonable officer [would] have understood that his actions were prohibited[]" under "the factual scenario established by the plaintiff[.]" Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002).

The Court views the evidence with respect to the first consideration in the light most favorable to Landa. Harris, 550 U.S. at 378. The Court, for the reasons described supra Sec.IV.C.1, finds that Landa points to sufficient evidence to identify a material issue of fact as to whether a constitutional violation occurred during the arrest. Accordingly, the first consideration of the qualified immunity analysis weighs in favor of Landa. Hammock, 2007 WL 3232115, at *5.

The Court views the evidence concerning the second consideration in the light most favorable to Landa. Harris, 550 U.S. at 378. Based upon the facts alleged by Landa, the Court concludes it would have been clear to a reasonable officer that the alleged conduct in this case was prohibited. Hammock, 2007 WL 3232115, at *6–*7. Landa alleges that: (1) the handcuffs were tightly applied; and (2) Defendant Officers ignored her pain and discomfort. See supra Sec.IV.B.1. The Court finds that a jury, accepting Landa's version of the events, could find that Officer Defendants used excessive force in the course of the arrest. Kopec v. Tate, 361 F.3d 772, 777–78 (3d Cir. 2004).[28] Moreover, the Court declines to find, in light of the conflicting evidence in this

---

[28] The Kopec court found that qualified immunity did not shield defendant officers from liability on the grounds that : (1) "the right of an arrestee to be free from the use of excessive force in the course of his handcuffing clearly was established"; and (2) "a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth Amendment." 361 F.3d at 778.

case, that a reasonable officer would not have understood that the alleged application of force during handcuffing was prohibited.  Id.  Accordingly, the Court does not find that Defendant Officers are entitled to qualified immunity at the summary judgment stage. Murdock, 2011 WL 5320995, at *12–*15.

## CONCLUSION

The Court, for the above-stated reasons, will deny Defendants' motion for summary judgment.  The Court will issue an appropriate order.


 s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


**Dated:** August 24, 2016